IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


EVAN R. APPLEGATE

           Plaintiff,

v.                                                CIV 14-0093 JAP/KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition. *Doc. 16.* Having carefully reviewed the parties' positions and the material portions of the record, the Court recommends that Plaintiff's motion to remand be granted.

### I.    Procedural History

Plaintiff filed an initial application with the Social Security Administration for Disability Insurance Benefits on November 5, 2009. *AR* at 166-70.[1] Plaintiff's claim was initially denied on March 10, 2010, (*id.* at 99), and upon reconsideration on August 6, 2010 (*id.* at 114). Administrative Law Judge Barry O'Melinn ("the ALJ") held a *de novo* hearing on February 1, 2012, at which a vocational expert testified and attorney Ronald

---

[1] Documents 14-1 through 14-13 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

Harris represented Plaintiff. *Id.* at 29-85. The ALJ issued his decision that Plaintiff was

not disabled on March 14, 2012. *Id.* at 15. The Appeals Council denied Plaintiff's

request for review on November 26, 2013. *Id.* at 1-3. As such, the ALJ's Decision

became the final decision of the Commissioner*. Doyal v. Barnhart*, 331 F.3d 758, 459

(10th Cir. 2003).

At the time he applied for disability benefits in November 2009, Plaintiff was 39-

years old*. AR* at 166. He maintained that his ability to work was limited by sinusitis,

bronchitis, and vertigo, as well as conditions in his back, joints, feet, and ears. *Id.* at

195. Plaintiff's past work includes work as a sales representative for Ashley Furniture,

Sprint/Nextel, T-Mobile, and Mor Furniture for Less. *Id.* at 188, 203, 266. Plaintiff also

served in the United States Army from October 3, 1989 to March 2, 1990 and November

21, 1990 to May 18, 1991. *Id.* at 272. On June 7, 2011, the Department of Veteran's

Affairs ("VA") determined that there was a service connection for Plaintiff's

posttraumatic stress disorder ("PTSD") with depressive disorder to include fatigue and

granted his disability claim with an evaluation of 50 percent disability effective

November 4, 2009. *Id.* at 272.

A claimant seeking disability benefits must establish that he is unable "to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner is required to use a five-

step sequential evaluation process to determine eligibility for benefits. 20 C.F.R.

§§ 404.1520(a)(4) and 416.920(a)(4).

Here, at Step One of the sequential evaluation process, the ALJ found that Plaintiff had engaged in substantial gainful activity from September 27, 2010 through June 16, 2010. *AR* at 17. As a result, the ALJ found that benefits were properly denied at Step One; however, he continued his analysis of Plaintiff's claim, determining his residual functional capacity for the entire period at issue, "due to the length of time claimant was out of work before and after this period." *Id.* at 17. At Step Two, the ALJ determined that Plaintiff had the severe impairments of PTSD, fibromyalgia, irritable bowel syndrome, achilles tendonitis, headaches, and vertigo. *Id.* In contrast, the ALJ concluded that Plaintiff's tachycardia was not severe, as it did not meet the required duration and there was no indication that the condition would not respond to treatment. *Id.* At Step Three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the regulatory "listings." *Id.* At Step Four, he assessed Plaintiff's residual functional capacity ("RFC"), finding an RFC that allowed Plaintiff to perform sedentary work as defined in 20 CFR 404.1567(a) with simple, routine, repetitive tasks with no rate pace or production work. *Id.* at 19. The ALJ also determined that Plaintiff could not perform his past relevant work in retail sales, customer service, or as an assistant manager or phone representative. *Id.* at 21. Nevertheless, at Step Five, the ALJ determined that jobs exist in significant numbers in the national economy which Plaintiff can perform. *Id.* at 22.

Plaintiff alleges that the ALJ erred at Step Four by failing to consider the effect of his multiple impairments on absenteeism in his assessment of Plaintiff's RFC. *Doc. 28* at 10-11. Additionally, he contends that the Commissioner erred by failing to correct the ALJ's conclusion that VA doctors found Plaintiff's chronic fatigue syndrome,

fibromyalgia, and irritable bowel syndrome and associated signs and symptoms did not affect his ability to work. *Id.* at 11-12. Finally, Plaintiff contends that the ALJ and Appeals Council failed to properly evaluate Plaintiff's work at MOR Furniture as either an unsuccessful work attempt or a trial work period. *Id.* at 12.

## II.    Legal Standard

The general inquiry is whether the ALJ applied the correct legal standards and whether his decision is supported by substantial evidence. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012). A deficiency in either area is grounds for remand. *Id.* Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence, substituting its own discretion for that of the Commissioner.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.   Analysis

Plaintiff contends that the ALJ and the Appeals Council failed altogether to consider the VA's Compensation and Pension Report, which was completed by Ronald J. Morrell, M.D. on January 6, 2012.[2] *Doc. 36* at 1-3. Relatedly, Plaintiff maintains that the Commissioner erred in failing to correct the ALJ's misstatements to the effect that VA doctors found that his chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome and associated signs and symptoms did not affect his ability to work. *Doc. 28* at 11-12. The Commissioner, on the other hand, argues that the ALJ reasonably

---

[2] Dr. Morrell's "Compensation and Pension Report," as the Court refers to it herein, is also entitled the "Gulf War General Medical Examination Disability Benefits Questionnaire" and referred to by the Commissioner as the "Disability Benefits Questionnaire." *See AR* at 992 and *Doc. 34* at 12.

interpreted the VA's disability rating as supporting the RFC assessment and that any error in his reading of the January 6, 2012 Compensation and Pension Report was harmless. *Doc. 34* at 12. Because the Court concludes that remand is warranted based upon the ALJ's misapprehension of Dr. Morrell's findings in the Compensation and Pension Report, the Court's inquiry both starts and ends with this particular assertion of error.

The ALJ determined that Plaintiff's RFC would allow him to "perform sedentary work as defined in 20 C.F.R. 404.1567(a) with simple routine repetitive tasks with no rate pace or production work." *AR* at 19. He commenced his RFC analysis with a discussion of the VA's disability rating decision. *Id.* at 20. More particularly, he noted that the VA issued a rating decision in June 2011, determining that Plaintiff's rating "was service connected, and was for posttraumatic stress disorder (PTSD), with depressive disorder to include fatigue and granted with an evaluation of 50 percent effective November 4, 2009." *Id.* The ALJ explained that the VA's assessment was "not as valuable in determining functional limits as [he] might have hoped," because much of the assessment was not specific to Plaintiff; yet he explains that the report "is valuable in excluding certain limits . . . as reserved to patients rated at a higher level of disability." *Id.* The ALJ noted that the evaluation of certain impairments was deferred by the VA but concluded, referring to the January 6, 2012 Compensation and Pension Report of Dr. Morrell, that "the VA doctor's [sic] *did* indicate that [Plaintiff's] irritable bowel syndrome, fibromyalgia, and chronic fatigue and associated signs and symptoms do *not* affect his ability to work." *Id.* (emphasis added).

Following his discussion of the VA doctors' assessment of Plaintiff's limitations, the ALJ also discussed the February 2010 consultative examination by Frank G. Hesse, M.D. *Id.* The ALJ recounted Dr. Hesse's impressions that Plaintiff suffered from migraine headaches, frontal sinusitis, vertigo, insomnia, gastritis, and arthritis, but that Plaintiff may be "magnifying his symptomatology somewhat." *Id.* According to the ALJ, Dr. Hesse "clearly stated that it was his medication [sic] opinion and impression that [Plaintiff] is probably able to work." *Id.*

The ALJ also granted significant weight to the opinions of the state agency medical consultants who reviewed the medical evidence and found Plaintiff capable of sedentary work. *Id.* at 21. The ALJ found the opinions of these consultants to be supported by other findings in the record and not contrary to other substantial evidence. *Id.* The ALJ also again explained that "no treating physician or doctors with the VA . . . offered the opinion that [Plaintiff] is disabled" and that "[i]n fact, the VA doctor's [sic] did indicate that his impairments and symptoms do not affect his ability to work." *Id.*

Finally, the ALJ reasoned that his RFC determination -- that Plaintiff was "able to sustain sedentary work, performing simple routine repetitive tasks with no rate pace or production work" -- was "consistent with the VA determinations to date." *Id.*

Plaintiff contends that the ALJ failed to consider Dr. Morrell's Compensation and Pension Report altogether and that he instead only considered the VA's 2011 disability rating decision. *Doc. 35* at 2-3. Plaintiff reasons that the Compensation and Pension Report, which he identifies as Exhibit 15F, could not have been part of the VA's June 2011 rating decision to which the ALJ refers. *Id.* Plaintiff's contention is logical, as the Compensation and Pension Report was created some seven months after the VA's

rating decision. *AR* at 992. Yet the Court does not agree that the ALJ failed altogether to consider and address the findings of the Compensation and Pension Report.

While it is true that the ALJ did not directly refer to the Compensation and Pension Report by name or reference Exhibit 15F in his decision, he did refer to the conditions discussed by Dr. Morrell therein and he also cited to Exhibit 21F, which, in the Court's assessment, is a duplicate of Exhibit 15F. *Compare AR* at 861-869 *with AR* at 992-1018. As such, the Court is satisfied that the ALJ considered the Compensation and Pension Report found at both Exhibit 15F and Exhibit 21F. Indeed, the ALJ appears to have heavily relied upon and frequently referenced that report throughout his Step Four analysis, although he may have mistakenly referred to it as part of the VA's rating decision.

Significantly, however, the ALJ misapprehended Dr. Morrell's findings in the Compensation and Pension Report.  Question 2c of the report asked Dr. Morrell whether Plaintiff reported "any additional signs and/or symptoms not addressed above" – that is, any signs or symptoms *in addition to* those reported by Dr. Morrell in response to question 2a. *See AR* at 992-998. Dr. Morrell's response to question 2a indicated that Plaintiff had signs and symptoms related to chronic fatigue syndrome, fibromyalgia, and an intestinal condition. *See id.* at 995-997. Question 3, in turn, asked Dr. Morrell whether any of the *additional* signs and/or symptoms identified in response to question 2c might impact Plaintiff's ability to work. *See id.* at 999. Given that there were no *additional* signs and/or symptoms indicated by Dr. Morrell in response to question 2c, he reasonably concluded that there was no impact on Plaintiff's ability to work by *additional* signs and/or symptoms. It does not follow from this finding, however, that

Plaintiff's identified conditions – his chronic fatigue syndrome, fibromyalgia, and intestinal condition – did not affect his ability to work.

Indeed, Dr. Morrell went on to find that debilitating fatigue associated with chronic fatigue syndrome had reduced Plaintiff's daily activity level "to less than 50% of his pre-illness level." *AR* at 1001. He also explicitly determined that Plaintiff's chronic fatigue syndrome *did* limit his ability to work, citing absenteeism and poor motivation in sales in particular. *Id.* at 1005. Likewise, Dr. Morrell found that Plaintiff's fibromyalgia affected his ability to work, noting that Plaintiff experienced pain when lifting and carrying, increased absenteeism, and decreased motivation and energy. *Id.* at 1010. Finally, Dr. Morrell determined that Plaintiff's intestinal condition also had an impact on his ability to work, as the amount of time that he spent in the bathroom angered his supervisor. *Id.* at 1016-17. In short, Dr. Morrell explicitly found that Plaintiff's chronic fatigue syndrome, fibromyalgia, and intestinal condition *did* impact his ability to work. Thus, the ALJ's recitation of Dr. Morrell's findings is directly contrary to the record, the ALJ apparently having misread Dr. Morrell's examination notes.

The Commissioner contends that any error by the ALJ in his consideration of Dr. Morrell's findings was harmless, reasoning  that the ALJ simply discounted the subjective symptoms recorded in the Compensation and Pension Report "because of Plaintiff's 'demonstrated ability to work since alleging disability' and Dr. Hesse's opinion." *Id.* at 13. The Court is not persuaded. The ALJ did not simply disregard or discount Dr. Morrell's findings. To the contrary, he misstated these findings and then relied upon his own misstatements in evaluating other medical opinions and in formulating Plaintiff's RFC.

Furthermore, Dr. Morrell's findings as to limitations on Plaintiff's ability to work are significant in this case. The Tenth Circuit has held that, although they are not binding, an ALJ must consider evidence regarding a Plaintiff's VA disability determination in reaching his own disability determination. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (holding that the ALJ erred in failing to discuss the significance of a VA's disability evaluation). In fact, if an ALJ rejects the VA's view of medical evidence in a particular case, he must explain his reasons for doing so. *See id.*

Additionally, it is clear from the ALJ's opinion and the transcript of the February 1, 2012 hearing, that the ALJ's reading of Dr. Morrell's findings, albeit mistaken, was central to his RFC formulation and ultimately to his unfavorable decision. At the hearing, the ALJ specifically inquired into the existence of documents from the VA related to Plaintiff's service-connected disability rating for PTSD of 50 percent. *Id.* at 41-44. He explained that a record of the VA's analysis would be very helpful and was something that he "would like to see." *Id.* Then, in his written decision, the ALJ referenced Dr. Morrell's records throughout his Step-Four analysis, using his reading of these records to bolster the opinions of the state agency medical consultants and explaining that the consultants' opinions were consistent with Dr. Morrell's findings. *See id.* at 21.

The ALJ's explanation as to the significant weight given to the consultants' opinions is also telling. He explained: "No treating physician or doctors with the VA, has offered the opinion that the claimant is disabled.  In fact, the VA doctor's [sic] did indicate that his impairments and symptoms do not affect his ability to work." *Id.* Finally, the ALJ explicitly stated that his RFC determination was "consistent with the VA

determinations to date." *Id.* Under the circumstances, the ALJ's error in this regard simply cannot be considered harmless.

Had the ALJ's reading of Dr. Morrell's finding been accurate, his decision may well have been supported by substantial evidence. But, because his recitation of Dr. Morrell's findings was wholly inaccurate, it cannot constitute substantial evidence in support of his decision. *See Alexander v. Barnhart*, 74 F. App'x 23 (10th Cir. 2003) (unpublished) (concluding that because the ALJ misstated a doctor's opinion, it could not "stand as substantial evidence of medical improvement"); *Morton v. Colvin*, 14cv0388 KBM, Doc. 21 (D.N.M. June 5, 2015) (holding that because the ALJ misstated findings of a medical source in formulating the plaintiff's RFC, his decision was not supported by substantial evidence).

## IV.    Conclusion

For these reasons, the Court concludes that the ALJ committed reversible error at Step Four of his analysis and that remand is warranted. Because the Court recommends remand on the basis discussed herein, it will not address Plaintiff's remaining claims of error as "they may be affected by the ALJ's treatment of the case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand *(Doc. 27)* be granted.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE

-11-

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**